UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

| | |
|---|---|
| **Travis Cox,**<br><br>**Impact Holdings LLC a/k/a Impact Homes Group,**<br><br>Plaintiffs,<br><br>v.<br><br>**Impact Home Group, LLC,**<br><br>**Impact Home Group, LLC,** and<br><br>**Jesse Allen**<br><br>Defendants. | Case No.: 3:21-cv-00053-CHB<br><br><br>**MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUCTION** |

Plaintiffs Travis Cox and Impact Holdings LLC a/k/a Impact Homes Group (collectively, "Impact Homes Group") for its Motion for Preliminary Injunction against defendants Impact Home Group, LLC, Impact Home Group, LLC, and Jesse Allen (collectively "Defendants"), states as follows:

## INTRODUCTION

Pursuant to Federal Rule of Civil Procedure 65, Plaintiffs request a preliminary injunction and/or restraining order to prohibit a direct competitor from unlawfully capitalizing on Plaintiff's brand by deliberately infringing on Plaintiffs' name. Defendant Jesse Allen brazenly copied the "Impact Homes Group" name in using for his moniker "Impact Home Group." Perhaps Jesse Allen believes that changing one letter defeats an infringement claim – it does not.

Travis Cox has been a licensed realtor with a Keller Williams since 2013. *See* Kentucky Broker Information attached as **Exhibit 1**. In 2017 he sought to grow his business by organizing a group of realtors under one brand. He researched other real estate groups in the market in order

to find a mark that would distinguish his group from others. After brainstorming and revision, he began operating under the trade name "Impact Homes Group" on January 31, 2017. *See* Social Media Screenshot attached as **Exhibit 2.** He organized Travis Cox Realty, LLC, a Kentucky limited liability company, on November 27, 2017, which was administratively dissolved on October 8, 2020. He organized Impact Holdings LLC on January 2, 2020 and remains its sole member. He assigned all rights to the "Impact Homes Group" mark to the new LLC on January 2, 2020. *See* Memorandum of Trademark Assignment attached as **Exhibit 3**.

On May 21, 2018, Travis Cox expanded his business and became a licensed real estate broker in Indiana as well as Kentucky. *See* Indiana Broker Information attached as **Exhibit 4.** Its marketing, client events, and commitment to customer service have allowed Impact Homes Group to sell at least 680 homes in counties including Clark and Floyd Counties in Indiana and Jefferson, Oldham, Shelby, Spencer, Bullitt, Nelson, Hardin, Meade, Larue, and Breckenridge Counties in Kentucky.

Since 2017, Impact Homes Group has advertised extensively in Indiana and Kentucky. From 2017 – 2019, Impact Homes Group spent approximately $300,000 in marketing expenses. In 2020 alone Impact Homes Group spent over $80,000 in marketing. These marketing efforts include hosting client events, direct mail, creating products that include the Impact Homes Group logo, and advertising on relevant websites including Zillow.com and social media.

Impact Homes Group has built a strong identity in the region largely through its marketing, commitment to its clients, and successful sales. Indeed, Impact Homes Group is recognized as one of the most successful Keller Williams groups in the region and is Keller Williams' second-highest grossing agency in the area.

Jesse Allen is a realtor that sells homes in both Indiana and Kentucky and also operates a Keller Williams group. At some point in late 2020, Jesse Allen sought to create his own realty brand. Unlike Travis Cox, Jesse Allen researched possible names for his group that would not distinguish his nascent group from established brands, but instead would trade upon the goodwill of successful realtors. Jesse Allen organized Impact Home Group LLC in Indiana on November 24, 2020. *See* Indiana Secretary of State Website Screenshot attached as **Exhibit 5.** Jesse Allen organized Impact Home Group LLC in Kentucky, as a separate Kentucky Domestic entity, on December 11, 2020. *See* Articles of Organization attached as **Exhibit 6.** Around the same time as organizing the limited liability companies, Jesse Allen began holding his Keller Williams group out as "Impact Home Group" – a name being just one letter different from Plaintiffs' senior mark, Impact Homes Group.

In conversation with Travis Cox, Jesse Allen admitted that his name choice was virtually identical to Plaintiffs' mark, and could result in loss of clients and revenue for Impact Homes Group. Despite legitimate demands to "cease and desist" infringement, Jesse Allen continues to operate his Keller Williams group under a deliberately infringing name and mark with the purpose of misleading consumers.

Impact Homes Group nearly immediately began to see confusion in the market. These incidents occurred quickly once Jesse Allen began using the infringing mark. Impact Homes Group anticipates it will learn of more confusion as long as Jesse Allen is operating his group under the infringing mark.

Impact Homes Group filed this lawsuit on January 28, 2019. That day the undersigned caused the summonses to be mailed to all defendants. *See* Docket No. 3. After learning of this lawsuit defendant Jesse Allen contacted Plaintiff Travis Cox. Jesse Allen threatened to tell other

unrelated realtor groups that Travis Cox was planning on suing them. Jesse Allen also had previously demanded thousands of dollars from Impact Homes Group or else he would continue in his infringement. Impact Homes Group does not need to pay off a bad faith infringer, it simply needs relief from the Court. Impact Homes Group respectfully requests the Court to enjoin Defendants from using the infringing name "Impact Home Group."

## ARGUMENT

Courts evaluate four factors in determining whether preliminary injunctions will be granted: "(1) whether the movant is likely to prevail on the merits; (2) whether the movant would suffer an irreparable injury if the court does not grant a preliminary injunction; (3) whether a preliminary injunction would cause substantial harm to others; and (4) whether a preliminary injunction would be in the public interest." *Abney v. Amgen, Inc.*, 443 F.3d 540, 547 (6th Cir. 2006) (quoted with approval by *Balcar v. Kessinger*, 2016 WL 6471097, at *2 (W.D. Ky. Oct. 28, 2016)); *Worthington Foods, Inc. v. Kellogg Company*, 732 F. Supp 1417, 1427 (S.D. Oh. 1990) ("The standard for a preliminary injunction is flexible and the four factors are not prerequisites to be met but instead the Court must balance them."). Impact Homes Group readily meets its burden on these elements.

Indeed, this Court has granted injunctions in similar cases where a business uses a name and mark similar to a competitor for the same services in the same market. *See generally Trilogy Healthcare of Louisville E., LLC v. Camelot Leasing, LLC*, 2019 WL 3991073 (W.D. Ky. Mar. 22, 2019). Impact Homes Group has very similar facts warranting injunctive relief as the successful movant in *Trilogy*. In *Trilogy*, a long-term care facility operated around Westport Road under the name "Westport Place Health Campus" ("WPHC") beginning July 12, 2011. *Id* at *1. Another long-term care facility operated around Westport Road about two miles from WPHC and, in November 2016, changed its name to "Westport Care Center." ("WCC"). *Id*.

Both entities used similar logos. *Id* at *7. Applying the analysis explained in Sections A-F below, the Western District of Kentucky issued an injunction, ordering WCC to cease "operating with, and promoting its business under" that name. *Id* at *11.

Like the senior mark in *Trilogy*, Impact Homes Group does not have a registered trademark. However, "[i]t is elementary that service mark ownership is not acquired by federal or state registration. Rather, ownership rights flow only from prior appropriation and actual use in the market." *Id* at *4 (*quoting Homeowners Grp., Inc. v. Home Mktg. Specialists, Inc.*, 931 F.2d 1100, 1105 (6th Cir. 1991)). Like the senior mark in *Trilogy*, Impact Homes Group actively used its mark in the market for several years prior to the Defendants' infringement. Like the senior mark in *Trilogy*, the competitor-defendant operated for years in competition to the senior mark before rebranding and adopting a mark to confuse consumers.

**I.      Impact Homes Group Will Succeed On The Merits of Its Claims**

To establish unfair competition under Section 1125(a) of the Lanham Act one must prove: "(1) ownership of a specific service mark in connection with specific services; (2) continuous use of the service mark; (3) secondary meaning if the mark is descriptive; and (4) a likelihood of confusion among consumers due to the contemporaneous use of the parties' service marks in connection with the parties' respective services." *Advance Stores Co. v. Refinishing Specialities*, Inc., 948 F. Supp. 643, 655 (W.D. Ky. 1996). Similarly, Impact Homes Group's common law infringement claim requires it to demonstrate that its tradename and logo are legally protectable and to establish infringement by showing a likelihood of confusion. *Colston Inv. Co. v. Home Supply Co.*, 74 S.W.3d 759, 767 (Ky. App. 2001).[1]  Thus, the overarching

---

[1] Federal courts apply a "uniform framework" in evaluating these claims because "Kentucky common law tracks federal law in this area." *Sazerac Brands, Ltd. Liab. Co. v. Peristyle, Ltd. Liab. Co.*, 892 F.3d 853, 856 (6th Cir. 2018).

considerations for the Court are (1) whether Impact Homes Group's mark is protectable and (2) if so, whether the mark of the "invading competitor", so to speak, is similar enough to the mark of the "established competitor" that it is likely to cause confusion in the marketplace.

Impact Homes Group will succeed because Defendants' willful infringement of its name demonstrates its bad faith and has caused actual confusion in the market.

### A. Impact Homes Group's Rights Are Protectable

When a service mark is unregistered, "protection is determined by where the mark falls along the established spectrum of distinctiveness." *Id* at *5. A valid and protectable mark must be either inherently distinctive or descriptive with secondary meaning. *Ward v. Knox Cty. Bd. of Educ.*, 612 F. App'x 269, 273 (6th Cir. 2015). "Within these two categories are sub-categories that form the complete spectrum of distinctiveness: (1) generic; (2) descriptive; (3) suggestive; and (4) arbitrary or fanciful." *Trilogy* at *5.

> Fanciful and arbitrary marks are the strongest types of marks. A fanciful mark is a combination of letters or other symbols signifying nothing other than the product or service to which the mark has been assigned (e.g., Exxon, Kodak). Arbitrary marks are slightly different. An arbitrary mark has a significance recognized in everyday life, but the thing it normally signifies is unrelated to the product or service to which the mark is attached.

*Worthington Foods, Inc. v. Kellogg Co.*, 732 F. Supp. 1417, 1433 (S.D. Ohio 1990) (cleaned up).

Here, the mark "Impact Homes Group" is arbitrary. The word "Impact" has significance in everyday life, but is completely unrelated to residential real estate. *See Daddy's Junky Music Stores, Inc. v. Big Daddy's Family Music Ctr.*, 109 F.3d 275, 281 (6th Cir. 1997) (holding "Daddy's Junky Music Stores" an arbitrary mark because phrases do not have any "inherent connection with the sale of musical instruments"); *see also KeyCorp v. Key Bank & Tr.*, 99 F. Supp. 2d 814, 823 (N.D. Ohio 2000) (holding that "Key Bank" is at least suggestive if not arbitrary and fanciful because "Key" does not have any inherent connection with banking

services.). Because the mark is arbitrary or fanciful, secondary meaning is not required, and the mark is protectible. *See Trilogy* at *5 (quoting 2 MCCARTHY ON TRADEMARKS AND UNFAIR COMPETITION § 11:2 (5th ed.)).

### B. Defendants' Actions Are Causing Actual Confusion In The Market

In assessing the likelihood of confusion, a court's concern is "the performance of the marks in the commercial context." *Homeowners Grp., Inc.*, 931 F.2d at 1106.

> In determining whether confusion is likely, a court will typically weigh eight factors: (1) strength of the senior mark; (2) relatedness of the goods or services; (3) similarity of the marks; (4) evidence of actual confusion; (5) marketing channels used; (6) likely degree of purchaser care; (7) the intent of defendant in selecting the mark; and (8) likelihood of expansion of the product lines.

*Id.* (cited with approval in *Trilogy,* 2019 WL 3991073, at *6). Here, all factors favor Impact Homes Group.

#### i. The Impact Homes Group Mark Is Strong.

"To evaluate the strength factor. . . the Court 'focuses on the distinctiveness of a mark and its recognition among the public.'" *Maker's Mark Distillery, Inc. v. Diageo N. Am., Inc.*, 679 F.3d 410, 419 (6th Cir. 2012) (quoting *Therma–Scan, Inc. v. Thermoscan, Inc.*, 295 F.3d 623, 631 (6th Cir. 2002). The Impact Homes Group mark is distinct for the reasons explained above. Courts evaluate whether the mark has received recognition among the public by evaluating the related marketing strategy. *See Trilogy* at *6.

Impact Homes Group's strength is evidenced by its successes. Indeed, Impact Homes Group is Keller Williams' second-highest grossing agency in the area. Moreover, Impact Homes Group has invested significantly in promoting its brand. From 2017 – 2019, Impact Homes Group spent approximately $300,000 in marketing expenses, most recently spending $80,000 in marketing in 2020. The Impact Homes Group mark features prominently in every advertisement

and all marketing materials Impact Homes Group creates. This factor favors Impact Homes Group.

### ii. The Goods and Services Could Not Be More Related

Courts review three criteria for evaluating the relatedness of goods and services:

> First, if the parties compete directly, confusion is likely if the marks are sufficiently similar; second, if the goods and services are somewhat related, but not competitive, then the likelihood of confusion will turn on other factors; finally, if the products are unrelated, confusion is highly unlikely. The relatedness inquiry therefore focuses on whether goods or services with comparable marks that are similarly marketed and appeal to common customers are likely to lead consumers to believe that they come from the same source, or are somehow connected with or sponsored by a common company.

*AutoZone, Inc. v. Tandy Corp.*, 373 F.3d 786, 797 (6th Cir. 2004) (cleaned up).

Both Impact Homes Group and the Defendants are realtors in Indiana and Kentucky. Both parties represent buyers and sellers of residential real estate. These facts alone make the services Defendants provide "related" to Plaintiffs. To make the infringement more egregious, Defendants operate a Keller Williams group – the same agency under which Impact Homes Group operates. Defendants are willfully infringing a mark used by a competitor *within their own agency*. Accordingly, this factor strongly favors Impact Homes Group.

### iii. The Marks Are Remarkably Similar

Additionally, the marks could not be more similar without being identical. Defendants' name "Impact Home Group" is simply one letter different than "Impact Home Group."

"The similarity of the senior and junior marks is a factor of considerable weight. When analyzing similarity, courts should examine the pronunciation, appearance, and verbal translation of conflicting marks." *AutoZone, Inc.* at 795 (6th Cir. 2004) (quoting *Daddy's* at 283).

"Equity should and will protect the owner of an established business from unfair competition by a newcomer's use of a business name so deceptively similar as to infringe upon the goodwill and reputation of his business even though such name includes a geographic term."

8

*Jackson v. Stephens*, 391 S.W.2d 702, 705 (Ky. 1965) (internal citations omitted). In *Jackson*, plaintiffs owned and operated *Falls Motel And Restaurant* near Cumberland Falls. *Id* at 703. Plaintiffs did not register their trademark but used the name *Falls Motel And Restaurant* in commerce for several years. *Id*. Subsequently, a competitor built a hotel named *Falls View Motel*. *Id*. The *Jackson* Court stated "[u]nder Kentucky law a trade name does not have to be identical with another in order to justify a court in enjoining its use. It is sufficient if it is so similar to the earlier adopted trade-mark as to make it likely that unsuspecting persons would be led to believe that it was the same." *Id* at 706. The Court ultimately held "no newcomer should be allowed to 'pirate' the name, goodwill, business or services of another often acquired through pioneering, privation and hardship. Courts should be alert and unhesitating in preventing such piracy," and affirmed the injunction. *Id*.

When analyzing the "pronunciation, appearance, and verbal translation" of the two marks it is impossible to ignore their similarity.

    **iv.**    **There is Evidence of Actual Confusion**

"The touchstone of liability under § 1114 is whether the defendant's use of the disputed mark is likely to cause confusion among consumers regarding the origin of the goods offered by the parties." *Daddy's Junky Music Stores,* 109 F.3d at 280. "There can be no more positive proof of likelihood of confusion than evidence of actual confusion." *Standard Oil Co. v. Standard Oil Co.*, 252 F.2d 65, 74 (10th Cir. 1958).

In the short time Defendants have operated under the infringing mark Impact Homes Group has been alarmed by the instances of actual confusion. Impact Homes Group is aware of significant consumer confusion in the market. As stated in its Verified Complaint, Impact Homes Group has discovered the following incidents of actual confusion:

9

a. On December 16, 2020 Travis Cox received a call from a tenant occupying a home that was listed by Jesse Allen's group. Jesse Allen had not told the tenant when showings were scheduled and the tenant complained that prospective buyers were walking in while he was in the house and seemed very frustrated. In calling Travis Cox, the tenant mistakenly believed that he was calling the realtor selling his home due to the confusingly similar names. The tenant stated that he got the contact information by searching the name of the group on the "For Sale" sign at his house on the internet.

b. On December 17, 2020 a potential client reached out to Impact Homes Group from a referral from a lender. That potential client stated that she was not certain if she was contacting the correct Impact Homes Group since she found multiple entities online with the same name.

c. Multiple people have contacted Impact Homes Group to ask if Jesse Allen joined that group.

d. On January 26, 2021, Jesse Cox attended an invitation-only event in Dayton, Ohio for high performing realtors. At that event, an Indiana-based realtor stated that he saw Jesse Cox listed a house in that realtor's neighborhood, and congratulated him on his successes. Jesse Cox knew he did not have a house for sale in that neighborhood. When asked about it, the realtor stated that he "saw Impact Home Group" on the sign.

Under Kentucky common law, "[i]t is not necessary to show that one has actually been misled; it is sufficient if the similarity is such as to likely produce deception." *Louisville Taxicab & Transfer Co. v. Yellow Cab Transit Co.*, 53 F. Supp. 272, 276 (W.D. Ky. 1943) (internal citations omitted) (emphasis added). The court in *Louisville Taxicab* defined unfair competition "as passing off, or attempting to pass off, upon the public the goods or business of one man as being the goods or business of another. Any conduct tending to produce this effect constitutes

unfair competition and may be enjoined. The means employed are wholly immaterial." *Id.* (citations omitted).

Here individuals are not merely *likely* to be misled, but are actually being misled, and will continue to be misled absent an injunction. Accordingly, this factor favors Impact Homes Group.

    v.    **The Defendants Use The Same Marketing Channels**

Courts are concerned about this factor when other factors are unhelpful. *Therma-Scan, Inc. v. Thermoscan, Inc.* at 637. If it is not clear if the parties share customers, then knowing where the parties advertise can be "illuminating." *Id*. Here, there is no doubt that the other factors strongly favor Impact Homes Group *and* the parties use the same marketing channels.

Consumers search online for realtors and are likely to find both groups. Additionally, realtors commonly advertise with for sale signs in the yards of homes on the market. One individual, as noted above, confused Defendants' yard sign for Plaintiffs'. Additionally, both marks are likely to be found on Zillow and other online home selling sites.

As there is no distinction between the Parties' marketing channels this factor favors Impact Homes Group.

    vi.    **Careful Purchasers May Still Be Confused**

While consumers are likely to be careful when buying a new home, "confusingly similar marks may lead a purchaser who is extremely careful and knowledgeable about the instrument that he is buying to assume nonetheless that the seller is affiliated with or identical to the other party." *Daddy's*, 109 F. 3d at 286. Thus, the "effect of purchaser care, although relevant, will be less significant than, or largely dependent upon, the similarity of the marks at issue." *Id*. In other words, if the Court finds that the marks are similar, then purchaser care, if established, will

decrease the likelihood of confusion only minimally. *Id*. Here, the marks are nearly identical. Thus, this factor should not be afforded much weight.

### vii. Defendants Willfully Infringed On the Impact Homes Group Mark

"Although intentional infringement is not necessary for a finding of likely confusion, the presence of that factor strengthens the likelihood of confusion." *Wynn Oil Co. v. Am. Way Serv. Corp.*, 943 F.2d 595, 602 (6th Cir. 1991). Indeed, "[i]f a party chooses a mark with the intent of causing confusion, that fact alone may be sufficient to justify an inference of confusing similarity." *Homeowners Grp., Inc. v. Home Mktg. Specialists, Inc.*, 931 F.2d 1100, 1111 (6th Cir. 1991) "Circumstantial evidence of copying, particularly 'the use of a contested mark with knowledge of the protected mark at issue,' is sufficient to support an inference of intentional infringement where direct evidence is not available. *Therma-Scan, Inc. v. Thermoscan, Inc.*, 295 F.3d 623, 638–39 (6th Cir. 2002) (citing *Champions Golf Club, Inc. v. The Champions Golf Club, Inc.*, 78 F.3d 1111, 1121 (6th Cir. 1996))[2].

There is no doubt that Defendants selected the mark "Impact Home Group" to trade upon the good will Impact Homes Group previously established. Defendants operated a Keller Williams Group and would have access to internal Keller Williams communications which recognize the best performing groups in their region. Impact Homes Group was consistently one of the top performers among Jesse Allen's direct competitors. This alone is sufficient evidence to presume Defendants' intentional infringement.

---

[2] *See also Wynn Oil Co*. at 595 ("Understandably, courts have held that use of a mark with knowledge of another's prior use of the mark supports an inference of intentional infringement. *Empire Nat'l Bank v. Empire of America*, 559 F.Supp. 650, 657 (W.D. Mich. 1983); *Koffler Stores, Ltd. v. Shoppers Drug Mart, Inc.*, 434 F.Supp. 697, 703–04 (E.D. Mich. 1976), aff'd without opinion, 559 F.2d 1219 (6th Cir. 1977); *see Mishawaka Rubber & Woolen Mfg. Co. v. S.S. Kresge Co.*, 119 F.2d 316, 324 (6th Cir. 1941) (intent to deceive public will be presumed from continued use after attaining knowledge of another's legal mark)."

    **viii.    The Risk Of Expansion is the Same for Both Parties**

> [A] finding that the parties probably will not expand significantly beyond their present positions does not address the question whether the defendant's use of the mark to market his service is likely to cause confusion. Thus, as with the seventh factor, an affirmative finding will provide a strong indication that the parties' simultaneous use of the marks is likely to lead to confusion, while a negative finding is not a strong indication to the contrary.

*Champions Golf Club, Inc.* at 1122 (cleaned up).

Both Parties operate as realtors in Indiana and Kentucky. Their target markets appear to entirely overlap. If they expand they will likely to continue to expand into markets where they each operate, or have the opportunity to operate.

**II.    <u>A Preliminary Injunction Will Save Impact Homes Group From Irreparable Harm</u>**

The second element supporting the injunction is the risk of irreparable harm to Impact Homes Group. An injury is "irreparable" if there is no adequate remedy for it existing at law. *Wallace v. Jackson*, 224 Ky. 25, 3 S.W.2d 766, 767 (Ky. 1928); *see also United Carbon Co. v. Ramsey,* 350 S.W.2d 454, 456 (Ky. 1961) ("an injury is regarded as irreparable if there exists no certain pecuniary standard for the measurement of the damages"). Courts find irreparable harm routinely on similar facts. *See e.g. Frisch's Rests., Inc. v. Elby's Big Boy of Steubenville, Inc.*, 670 F.2d 642, 651 (6th Cir. 1982).

Indeed, irreparable injury is generally presumed in cases of trademark infringement: "In the trademark context, the first factor is often decisive. If the movant is likely to succeed on an infringement claim, irreparable injury is ordinarily presumed, and the public interest will usually favor injunctive relief." *PGP, LLC v. TPII, LLC*, 734 Fed.Appx. 330, 332 (6th Cir. 2018); *see also Perfetti Van Melle USA v. Cadbury Adams USA LLC*, 732 F. Supp. 2d 712, 725 (E.D. Ky. 2010) ("Ordinarily, 'irreparable injury . . . follows when a likelihood of confusion or

13

possible risk to reputation appears from infringement or unfair competition." (*quoting Circuit City Stores, Inc. v. CarMax, Inc.*, 165 F.3d 1047, 1056 (6th Cir. 1999)).

Not only is there a "likelihood of confusion," there is actual confusion. Impact Homes Group therefore meets its burden of showing irreparable harm *as a matter of law*, and suffers this irreparable harm for every day Defendants are permitted to operate under their infringing mark. Defendants should not be permitted to adopt a brand nearly identical to Plaintiffs' in an attempt to pirate Plaintiffs' goodwill.

### III. A Preliminary Injunction Will Not Harm Others

The third element supporting an injunction is a finding that such relief will not harm others. "This factor is generally concerned with harm to third parties, not those parties involved in the dispute." *See Trilogy,* 2019 WL 3991073, at *11 (citing *Certified Restoration Dry Cleaning Network, L.L.C. v. Tenke Corp.*, 511 F.3d 535, 551 (6th Cir. 2007). Impact Homes Group is not aware of any third party who would be harmed by an injunction. On the rare occasion when the courts do consider harm to a party involved with the dispute, merely altering one's name is not sufficient harm. *See Tumblebus Inc. v. Cranmer*, 399 F.3d 754, 760 (6th Cir. 2005) (affirming that "the injunction would not cause substantial harm … because the injunction did not require Cranmer's business to cease operation.").

In *Trilogy*, the Court ordered the infringing organization to remove the term "Westport" from its name and change its logo. *Trilogy* at *11. While the potential harm to the party to be enjoined is not a factor to be considered, the *Trilogy* Court was skeptical that the offending organization would suffer any harm as it could not set forth evidence of its goodwill, and the name "Westport" was not indicative of the source of its services. The same conclusion should be reached here, and with even more certainty than in *Trilogy*. Defendants have only recently begun

their infringing activity. They have not poured the resources and time Plaintiffs have into the Impact Homes Group mark. They will not suffer harm in changing their name.

## IV. A Preliminary Injunction is in the Public Interest

Finally, an injunction is proper when it serves the public interest. The Court will serve the public interest by creating clear lines between competitors: "It is generally in the public interest to grant an injunction in cases of infringement." *See Trilogy*, 2019 WL 3991073, at *11 (citing to *Gougeon Bros., Inc. v. Hendricks*, 708 F. Supp. 811, 818 (E.D. Mich. 1988) ("Trademark infringement, by its very nature, adversely affects the public interest in the 'free flow' of truthful commercial information."); *PGP, LLC*, 734 Fed.Appx. at 332 ("[i]n the trademark context … [i]f the movant is likely to succeed on an infringement claim … the public interest will usually favor injunctive relief.").

Thus, the law provides that the Court can find an injunction will serve the public interest based on the evidence of Plaintiff's prior use of the Impact Homes Group mark and the instances of actual confusion.

## V. The Court Should Not Require A Security

Fed. R. Civ. Pro. 65(c) allows the Court to issue and injunction "if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained." Here, no security is required.

This circuit has long-held that injunction bonds are optional at the discretion of the Court. *Roth v. Bank of Commonwealth*, 583 F.2d 527, 539 (6th Cir. 1978) (*citing Urbain v. Knapp Bros. Mfg. Co.,* 217 F.2d 810, 816 (6th Cir. 1954)). "When there is no evidence that an injunction will harm the defendant, courts typically exercise their discretion to deny a bond." *Koorsen Fire &*

*Sec., Inc. v. Westerfield*, No. 1:17-cv-845, 2018 U.S. Dist. LEXIS 203766, at *31 (S.D. Ohio May 21, 2018).

Here, Defendants have only recently started using the infringing name. Defendants have not had the time for large marketing campaigns or significant investment in their infringing name. Therefore, Defendants will not suffer any material prejudice by changing the name they use in commerce. Moreover, Courts balance equitable considerations when providing Fed. R. Civ. Pro. Relief. *See generally In re DeLorean Motor Co.*, 755 F.2d 1223, 1229 (6th Cir. 1985). "It is fundamental that he who seeks equity must do equity, and that he must come into Court with clean hands." *Elliott v. First Fed. Cmty. Bank of Bucyrus*, 821 F. App'x 406, 420 (6th Cir. 2020). Defendants do not have clean hands. Indeed, they adopted and used their infringing mark with full knowledge of the prior existence and prevalence of Plaintiffs' mark, and therefore knowingly infringed. Therefore, the Court should not punish the Plaintiffs by making them pay for a bond.

## CONCLUSION

Because there is accelerating actual confusion in the Market based on Defendants' infringement, and because Impact Homes Group has established all elements required for injunctive relief, Impact Homes Group respectfully requests this Court enjoin and/or restrain Defendants from using their infringing mark.

Respectfully submitted,

 /s/ Kyle W. Miller
Jared A. Cox
Kyle W. Miller
DENTONS BINGHAM GREENEBAUM LLP
3500 National City Tower
101 South Fifth Street
Louisville, Kentucky 40202
Telephone: (502) 589-4200
Fax: (502) 587-3695

E-mail: jared.cox@dentons.com
kyle.miller@dentons.com
COUNSEL FOR PLAINTIFFS,
IMPACT HOLDINGS LLC A/K/A IMPACT
HOMES GROUP AND TRAVIS COX

**CERTIFICATE OF SERVICE**

It is hereby certified that on the 3rd day of February, 2020, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system, which will send a notice of electronic filing to all counsel of record through the ECF system. Further I mailed copies to Defendants' principal place of business and residence at:

2207 Meadowbrook Way            5710 Lentzier Trace
Jeffersonville, IN 47130              Jeffersonville, IN

Additionally, I mailed copies to the LLC's registered agents at:

Legalinc Corporate Services Inc.        Legalinc Corporate Services Inc.
4965 US HWY 42                         8520 Allison Pointe Boulevard
Suite 1000-34                          Suite 220 #122
Louisville, KY 40222                   Indianapolis, IN 46250

Additionally, I emailed Defendant Jesse Allen at jessesellskentuckiana@gmail.com.

            /s/ *Kyle W. Miller*
            COUNSEL FOR PLAINTIFFS